### In re IMPERATORI.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

ATTORNEY AND CLIENT (§ 42*)—MISCONDUCT OF ATTORNEY.

> An attorney engaged to secure a reduction of an assessed valuation of property at an agreed fee of 50 per cent. of any reduction which might be secured entered into an agreement with a real estate expert to pay him 50 per cent. of any net fee secured in consideration of an appearance in the case by such expert before the tax commissioners as a witness. *Held*, that the contract between the attorney and real estate expert was a direct encouragement to such witness to regulate his testimony by his interest rather than by his independent judgment, and to subvert justice by committing perjury in his estimate of the value of the property, and that the attorney in entering into such a contract was guilty of misconduct which would justify suspension.

> [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

Charges by the Association of the Bar of the City of New York against Reginald J. Imperatori of professional misconduct. Respondent suspended for one year.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Einar Chrystie, of New York City, for petitioner.

Reginald J. Imperatori, of New York City, in pro. per.

PER CURIAM. The respondent was admitted to practice in April, 1901. Prior to December 2, 1909, the respondent had been retained by one Buckley to secure a reduction in the assessed valuation of certain property on Columbus avenue, in the borough of Manhattan, city of New York. Buckley signed a contract by which he agreed to retain the respondent to take the necessary proceedings to secure a reduction of the assessed valuation of such property, and which provided:

"If a reduction is obtained I agree to pay him fifty per cent. of the net amount saved to me for the year 1909 by reason of such reduction. I am to pay nothing if a reduction is not secured."

On the 2d of December, 1909, the respondent entered into a contract with one Thompson, who was not an attorney at law, but was a real estate expert, and who was to be a witness in the proceeding brought to review the action of the tax commissioners in assessing the value of the Buckley property. That contract was evidenced by a letter written by the respondent to Thompson as follows:

"In consideration of the services already rendered by you, as real estate expert in appearing before the tax commissioners and in instituting negotiations looking toward a settlement with Mr. Purdy, president of the tax board, and your agreement to make all necessary appraisements and appear as an expert witness, without further expense to the property owner or to me, in certiorari proceedings before the court or referee, or before the tax board, as may be necessary, I hereby agree to pay you 50 per cent. of my net fees received by me in connection therewith for 1909 and 1910 either as the result of a trial, compromise or otherwise in the matter of Nos. 249 to 255 Columbus avenue, and of Nos. 331 to 339 Columbus avenue, the property of Daniel Buckley. In the event of there being no saving of taxes in this proceeding, you are to receive nothing for your services whatever."

In reply to this letter, Thompson wrote to the respondent, stating that:

"The fee of 50 per cent. of the net fees received by you for the cases of 1909 and 1910 is satisfactory and I am prepared to do all things necessary as a real estate expert in connection with the litigations."

In addition to this case of Buckley there were two other cases in which the respondent was retained to reduce the assessment, and in which the respondent made the same agreement with Thompson to pay him for the services that he was to render, which included paying a witness in certiorari proceedings to review the assessment, and in each of these cases Thompson gave expert testimony in tax reduction proceedings before the board of tax commissioners, and as the result of his testimony the taxes on the properties involved in the proceedings were reduced.

In his answer to these charges the respondent admits the making of the agreement set forth in the petition, and annexes to his answer

the letter of acceptance by the real estate expert of the employment contained in the letter of December 2d, and denied none of the allegations of the petition. The respondent, therefore, about to institute a proceeding for the reduction of the assessed value of real property which depended upon the proof of the value of the property which had been assessed, first before the tax commissioners, and, if not successful, then to institute proceedings before the Supreme Court to review the action of the tax commissioners, made this agreement with a real estate expert and appraiser who, in consideration of the services that he was to render as an expert in testifying in favor of the respondent's client, was to receive as his fee one-half of the fee that was to be paid to the respondent, which fee was a contingent one based upon the amount of the reduction which the respondent by this proceeding succeeded in obtaining. In such a proceeding the sole question of fact to be determined was as to the value of the property assessed, and the sole evidence which could be procured of such value was the testimony of expert witnesses acquainted with the value of real estate, and who would testify as to its value. Thus by the contract made by the respondent a witness was to be paid for testifying one-quarter of the amount that was recovered as the result of the litigation. By such a contract there was a direct encouragement to the witness to underestimate the value of the property, and to regulate his testimony, not by his independent judgment, but by his interest in obtaining a reduction of the assessed value of the property. That the evidence to be given was evidence of the opinion of an expert makes the contract the more reprehensible. No prosecution for perjury against the witness could be sustained, no matter how exaggerated his testimony should be. What he was to testify to was the opinion of an expert, and the value of his testimony depended entirely upon his expert knowledge, and his competency to fairly judge of what the value of the property should be. The witness who was thus to be compensated was placed in the position of testifying money into his own pocket under the guise of appearing as an expert witness. A reasonable compensation paid to an expert witness is allowed for his testimony in relation to such a subject. Investigation is necessary, which takes time, and the exercise of peculiar skill and knowledge, but in such a case the witness is paid for his time spent and services rendered, irrespective of his testimony, and it is perfectly apparent that to hire a witness to testify, giving him a percentage of any recovery based upon his testimony, is a direct incentive to perjury, and directly tends to subvert the administration of justice.

This court had occasion to express its opinion upon practice of this kind in Matter of Schapiro, 144 App. Div. 1, 128 N. Y. Supp. 852. The question presented is there stated as follows:

"Thus a person who was to be examined as a witness received from the attorney who expected to call him an agreement by which the attorney agreed to pay him if he would testify a substantial portion of the recovery which would result from the testimony this witness was to give upon the trial; and the bald question that we have presented is whether the making of such an agreement between an attorney who represented a party to an action

and a person who was to be called as a witness to prove the cause of action is professional misconduct."

And after calling attention to various sections of the Penal Law it was said:

"If agreements between attorneys and witnesses upon whose testimony the clients' cases depend to share in the attorney's fees for conducting the prosecution are to be approved, it will be almost impossible to prevent perjury, and the violation of these provisions of the Penal Law and Penal Code to which attention has been called. The only safeguard lies in the fact that the attorney is an officer of the court upon whom rests the responsibility of preventing false or perjured testimony, and calling only those witnesses whom he believes to be truthful witnesses testifying to facts as they understand them to be, and there can be no greater professional misconduct than for an attorney and counselor at law to make agreement by which a witness is to share in the result of the action, and then calling the witness and offering his evidence to the court and jury as testimony to influence them in the determination of the question submitted. * * * Such an agreement, however, can never be valid where the amount to be paid is to depend upon the testimony that he is to give, and where his right to compensation depends upon the result of the litigation in which he testifies. It is apparent, therefore that the mere making of such an agreement as the respondent admits he made in this case by which a witness that he intended to call and did call to prove his case should have a substantial portion of the recovery, if one was obtained, is a most serious professional misconduct demanding the strongest condemnation."

The respondent in this case has been guilty of the misconduct that we thus characterized in the Schapiro Case. In this proceeding, however, he frankly admits the making of the contract, and seems upon the submission of the proceeding to be entirely oblivious to the serious character of the charge that has been made against him. We here reiterate that it is serious professional misconduct and practice which is clearly prejudicial to the administration of justice for an attorney to make a contract with a witness whom he expects to call in a judicial proceeding whether the witness be an expert witness or not, and making his compensation for giving the testimony dependent upon the outcome of the litigation in which the witness is to testify. An attorney who makes contracts of this character is unfit to remain a member of the profession.

We have seriously considered the result that should follow from this misconduct, and, in consideration of the fact that the offense was committed prior to the decision of this court in the Schapiro Case, we have concluded not to inflict the extreme penalty of disbarment, but to suspend the respondent from practice for the period of one year, and it is so ordered.