THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL FLOERSHEIMER, Respondent, *v.* LAWSON PURDY and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants. (Taxes of 1914 and Taxes of 1915.)

First Department, December 1, 1916.

Corporations — purpose of statute forbidding practice of law by corporation — taxes — corporation not authorized to apply under section 37 of Tax Law on behalf of owner for reduction of assessment — certiorari to review assessment cannot be conducted by corporation through attorney employed by it.

Section 2a of the Business Corporations Law and section 280 of the Penal Law were both designed to put a stop to a rapidly-growing practice by impersonal corporations of exercising functions which can properly be exercised only by a duly admitted and licensed attorney who is under the strict supervision of the court and amenable to its discipline.

Where it appears that a proceeding for a writ of certiorari to review the assessments of real property in the city of New York, and also the preliminary application to the tax board for the reduction of the assessment have been conducted by a business corporation under a contract for a fee contingent upon success, and that the attorney who appears as the attorney of record for the owner was selected and employed by the

corporation and will be compensated, if at all, by it out of its contingent fund, and was unknown to the owner at the time the retainer was signed, the proceeding should be dismissed, because *first*, the corporation was not a proper person under section 37 of the Tax Law to make the application for the reduction of the assessment by the tax board, and *second*, the acts of the corporation constituted the practicing of law or the furnishing of an attorney in violation of the statute.

DOWLING, J., dissented, with opinion.

SEPARATE APPEALS by the defendants, Lawson Purdy and others, as commissioners, from two orders of the Supreme Court, one in regard to the taxes for each year, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of May, 1916, denying their motions to vacate orders granting writs of certiorari herein, and to dismiss said writs.

*William H. King* [*Eugene Fay* with him on the brief], for the appellants.

*Gabriel I. Lewis*, for the respondent.

SCOTT, J.:

These are appeals from two orders denying motions to dismiss writs of certiorari sued out to review the assessment of real property in the city of New York for the purposes of taxation.

One proceeding relates to the assessment of relator's property for taxation in the year 1914, and the other for the year 1915. As substantially the same questions are involved in both appeals they may conveniently be considered together.

The ground for moving to dismiss the writ in each case is that the proceeding was in fact brought and conducted, in behalf of relator, by a business corporation known as L. Tanenbaum, Strauss & Co., Inc., in violation of law. (Business Corporations Law [Consol. Laws, chap. 4; Laws of 1909, chap. 12], § 2a, as added by Laws of 1909, chap. 484; Penal Law, § 280, added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317.)* The two sections specified were both designed to put a stop to a rapidly-growing practice by imper-

---

* Since amd. by Laws of 1916, chap. 254.— [REP.

sonal corporations of exercising functions which can properly be exercised only by a duly admitted and licensed attorney who is under the direct supervision of the court and amenable to its discipline. The merits of the legislation, the beneficient purpose intended to be effected by it and the necessity, in the interest of clients and the administration of justice, of its strict enforcement have often been judicially declared, and efforts to evade or circumvent the law have been consistently condemned. Both enactments are directed against the same evil. For brevity we quote from only one of them, to wit, section 280 of the Penal Law, which provides as follows: " It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney-at-law for any person other than itself in any court in this State or before any judicial body, or to make it a business to practice as an attorney-at-law, for any person other than itself, in any of said courts or to hold itself out to the public as being entitled to practice law, or render or furnish legal services or advice, *or to furnish attorneys or counsel* or to render legal services of any kind in actions or proceedings   *   *   *."

It appears very clearly from the evidence taken at Special Term in both of these cases upon the motions to dismiss, that this proceeding, including the preliminary application to the tax board for the reduction of the assessment, have been conducted by the corporation of L. Tanenbaum, Strauss & Co., Inc., under a contract for a fee contingent upon success, and that the attorney who appears as the attorney of record for the relator was selected and employed by said corporation, and will be compensated, if at all, by it out of its contingent fee.

The corporation in question was organized in the year 1912 by the present attorney for the relator and two clerks in his office as incorporators, with an authorized capital of $2,000, of which it was proposed to begin business with $500. The purposes of the corporation as stated in its certificate covered a wide field of possible business activities. All that is of interest at present is its authorization " To appraise all forms of real and personal property and all interests therein and to furnish services in the reduction of taxes and assessments so far as and to the extent that the same may be done and performed

by corporations organized under the Business Corporations Law of the State of New York." That the attempt to procure the reduction of assessments has been an important part of the business of the corporation is shown by the testimony of its president that in a single year as many as 1,000 applications for reduction had been made to the tax board. Under the Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], §§ 37, 290)* and the charter of the city of New York (Laws of 1901, chap. 466, §§ 895, 898, 906, as amd. by Laws of 1911, chap. 455, and Laws of 1913, chap. 324) no assessment can be reviewed by certiorari unless an application for the reduction has first been made to and refused by the tax board. Indeed, it is that refusal by the board which is the subject of review. The making of such an application is, therefore, the first step toward a judicial review. Section 37 of the Tax Law provides that such an application may be made by the person assessed or whose property is assessed, or by some person authorized to make such statement "and who has knowledge of the facts stated therein." In *People ex rel. Trojan Realty Corporation* v. *Purdy* (174 App. Div. 702, decided herewith) we have expressed the opinion that while this section will authorize an application by a lay agent if properly authorized and qualified, it cannot be construed as authorizing an application to be made by a corporation agent which has had no prior relation to or knowledge of the property assessed, since such a corporation cannot, in the nature of things have "knowledge of the facts stated." In both of the present cases the only authorized agent to act for the relator in making application to the tax board was the corporation above named, which had never had the property in charge, and the verification of the application in each case recites that it is the corporation which is acting for the owner. The proceeding in each case, therefore, fails, as we think, because in neither was there such an application to the tax board as is required by the statute.

But a much more serious objection to the proceeding is that the attorney who appears for the relator, although apparently not now a stockholder of the corporation referred to,

---

* Since amd. by Laws of 1916, chap. 323.— [REP.

was employed and retained by it to conduct the proceedings and must look to it for his compensation. This fact is established beyond question notwithstanding the inclusion among the papers on appeal of a formal notice of retainer, which is evidently merely formal and signed in one case a full year after the commencement of the proceeding. When read in connection with the relator's testimony it is clear that the attorney was not of his selection or even known to him when the retainers were signed. This circumstance, in our opinion, being clearly and explicitly forbidden by the statute above quoted taints the whole proceeding with illegality and justifies the motion for the dismissal of the writ. We cannot better express our own views as to the impropriety of the course adopted in the present cases than to adopt the language of Mr. Justice Greenbaum in *People ex rel. Holzman* v. *Purdy* (N. Y. L. J. Feb. 25, 1916), a case which presented many of the features of the cases at bar. He said: " Upon the opening of the trial the counsel for the City of New York asked the Court to consider the circumstances under which this proceeding was instituted and under which the attorney appearing for the relators was retained therein. The Court thereupon took testimony in open court respecting the matter mentioned, and thereafter a motion was made in behalf of the respondent to vacate the order directing the issuance of the writ of certiorari in the above-entitled proceeding and to quash the writ upon various grounds, among others that the order was granted upon the motion of an attorney of this Court who was retained not by the relators, but by one Tribelhorn, a stranger to this proceeding, who is not an attorney at law, under an agreement made between him and the relators, whereby he undertook to take all lawful proceedings to obtain a reduction of the valuation of the premises in question and when necessary to employ attorneys and experts and to pay the fees of such attorneys and experts, in consideration of which Tribelhorn was to retain one-half of the amount of the taxes saved by reason of any reduction of said assessed valuation secured by him. It is urged in behalf of the respondent that the agreement between the relators and Tribelhorn was unlawful and in violation of the Penal Law, and that the

attorney appearing herein was without legal authority to represent the relators; that the writ herein was unlawfully obtained and inadvisedly granted, and further, that the Court was without jurisdiction in the premises. It was established upon the hearing that the contract above described had, in fact, been made, and that the attorney appearing in behalf of the relators was retained by the person who procured the agreement for the relators and not by the relators. The Court has no hesitancy in finding that under the agreement between Tribelhorn and the relators, the former was in effect retained as an attorney to render such services, which are universally known as legal services and which are undertaken only by attorneys at law, duly admitted and licensed to practice as such. Services entirely similar in character to those contemplated by the Tribelhorn agreement were held to be legal services and in violation of the statute forbidding a corporation to practice law. (*Matter of City of New York* [*Ave. A*], 144 App. Div. 107.) In *Matter of Co-operative Law Co.* (198 N. Y. 479, 483) it was held that ' the relation of attorney and client is that of master and servant in a limited and dignified sense, and it involved the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it and a client of the corporation, for he would be subject to the directions of a corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client, but the corporation.' The foregoing reasoning is equally applicable where instead of a corporation an individual, not an attorney at law, employed an attorney under like circumstances. Section 270 of the Penal Code* *inter alia* makes it unlawful for any person not duly licensed and admitted to the practice of the law ' to practice or appear as an attorney at law ' or ' to

---

* See Penal Law, § 270. — [REP.

First Department, December, 1916.          [Vol. 174.

make it a business to practice as an attorney at law,' and declares that 'any person violating the provisions of this section is guilty of a misdemeanor.' It should also be noted that the feature of the Tribelhorn agreement, which obligates him to retain lawyers and experts and pay for their services, contravenes public policy and in itself justifies condemnation of the courts. (*Lyon* v. *Hussey*, 82 Hun, 15; *Matter of City New York, Ave. A, supra*, at p. 109.) Construing the effect of section 280 of the Penal Code,* which prohibits a corporation from practicing law, the learned presiding justice, who wrote the opinion in *U. S. Title Guar. Co.* v. *Brown* (166 App. Div. 688, at p. 691), says: 'True, the statute is not aimed at him (referring to the attorney retained by the corporation) directly, for he is permitted to practice law. But in that practice he accepted a retainer [from] the plaintiff to perform the illegal contracts which the plaintiff had made with third persons, and, in so far as he performed, he rendered himself *particeps criminis*' (citing *Arnot* v. *Pittston & Elmira Co.*, 68 N. Y. 558, 567, Penal Law, par. 27.†) It follows from what has been stated that the Tribelhorn agreement is illegal, and that the retainer of the present counsel by Tribelhorn in this proceeding was unlawful. * * * The machinery of the law was here set in motion by an attorney at law not employed by the relators and not subject to their control or power of dismissal. It would seem to follow that the attorney had no legal status before the Court to act for the relators, and that his appearance for the relators constituted a serious irregularity which ordinarily would justify the Court in refusing to retain jurisdiction of the matter before it."

In the case in which Mr. Justice GREENBAUM thus wrote he refrained from dismissing the writ for reasons which do not appear in the present cases. That the facts invested the court with power to dismiss he clearly demonstrated and we find in the present cases no reason why we should refrain from exercising that power.

The order appealed from should be reversed, with ten dollars

---

* See Penal Law, § 280, added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317. Since amd. by Laws of 1916, chap. 254.— [REP.

† See Penal Law, § 27.— [REP.

costs and disbursements in each case, and motions granted, with costs in each case.

CLARKE, P. J., SMITH and PAGE, JJ., concurred; DOWL-ING, J., dissented.

DOWLING, J. (dissenting):

For the reasons set forth in my dissenting opinion in *People ex rel. Trojan Realty Corporation* v. *Purdy* (174 App. Div. 710), I do not think that the corporation of "L. Tanenbaum, Strauss & Co., Inc.," was practicing law or violating the statute in representing, as agent, the owner of the premises in question before the tax commissioners in the effort to secure a reduction of the assessment thereon.

In the proceeding to review the assessment for the taxes of 1914, the owner had employed the corporation to represent him as agent before the commissioners. The corporation succeeded, upon its application on behalf of the owner, in securing a reduction of the assessment to the amount of $208,000. The tax commissioners did not question the propriety or legality of the owner being represented by a corporation, but granted the reduction solely on its application as agent for the owner. The owner, however, desired it to be still further reduced to $195,000 and before his departure for Europe authorized Tanenbaum, president of the corporation, whom he knew personally for some years, to take the steps which might be necessary to protect him in his absence. Tanenbaum, thus authorized, selected and retained counsel for the owner, whom the latter swears he was to pay, and the counsel thus retained commenced the present proceeding on the last day it could be begun, his client still being in Europe. Later, and a year before this proceeding came on for the hearing, and when so far as appears no suggestion of any attack upon the attorney's authority had been made, the owner signed a written authorization and retainer for his said attorney to represent him in the present proceeding, which he has continued to conduct down to the present time. I think it fairly established that the attorney Lewis was duly authorized to represent the owner and to apply for the writ herein, and I do not see how the tax commissioners, having reduced the assessment in question once

through the medium of "L. Tanenbaum, Strauss & Co., Inc.," as the owner's agent and recognizing it as such, can now claim that such agency was unlawful and unauthorized.

In the proceeding to review the assessment for the taxes of 1915, it appears that the attorney Lewis was duly retained in writing by the owner to represent him therein, such retainer being executed before the proceeding was instituted and the owner signed and verified the petition upon which the writ was issued.

Since in my opinion "L. Tanenbaum, Strauss & Co., Inc.," violated no law in presenting the grievances of the owner before the tax commissiouers and since Gabriel I. Lewis was duly authorized to represent the owner in applying for the writs herein, I think the orders appealed from should be affirmed, with costs.

Orders reversed, with ten dollars costs and disbursements in each case, and motions granted, with costs in each case.