THE PEOPLE OF THE STATE OF NEW YORK ex rel. TROJAN REALTY CORPORATION, Respondent, *v.* LAWSON PURDY and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants.   (Taxes of 1915.)

First Department, December 1, 1916.

Taxes — when petition for writ of certiorari to review assessments made by corporation or by an attorney representing it should be dismissed — expert witness — application by agent to reduce assessment — Tax Law, section 37, construed — effect of failure to appear before tax commission when summoned pursuant to section 37 of Tax Law — illegal practice of law by corporation.

Where the president of a realty corporation consulted an attorney and authorized him to attempt to obtain a reduction of tax assessments, and the latter instead of attending to it personally, turned the matter over to a business corporation which he had organized and a written application for the review and reduction of the assessment was presented to the tax commissioners, signed by the president of the corporation who described himself as agent for the owner of the property, and in the

body of the application was a request that all notices with regard thereto should be addressed to the corporation, and a notice was in due course sent to the president of the corporation as provided by section 37 of the Tax Law, requiring the person assessed or his agent or representative to appear and be examined respecting the complaint, and no one appeared, and the president of the corporation declined in writing so to do, a petition for a writ of certiorari to review the order of the commissioners refusing to reduce the assessment, signed and verified by the president of the corporation, but sued out by an attorney employed by it, should be dismissed, *first*, because there had not been a compliance with the Tax Law in making the application to the tax commissioners for a reduction of the assessment in that the person undertaking to represent the owner of the property as agent had never been appointed by it and had no knowledge of the facts, and that he refused to appear before the tax board when summoned, and *second*, because the proceeding involved the practicing of law by the corporation or in the name of an attorney employed by it in violation of the statute.

The property owner or person assessed may, however, apply to the tax board for the reduction of the assessment through a lay agent, if said agent be a person properly qualified and duly authorized, and the application be made in good faith, with the honest purpose of obtaining favorable action by the board.

A design by such a corporation to use as an expert witness before the tax board and the court a person whose compensation would be entirely contingent upon the successful outcome of the proceeding in which he was employed, is most objectionable.

The purpose of section 37 of the Tax Law, providing that complaints as to assessments must be verified "by the person assessed, * * * or by some person authorized to make such statement, *and who has knowledge of the fact stated therein,*" is that the tax board should be put into possession of reliable information from one who knows the facts to the end that it may act intelligently upon the application.

A corporation which has had no prior relation to, or knowledge of, the property assessed cannot be thus qualified.

The tax commission cannot be said to have waived a defect in a complaint made by a corporation because they acted thereon, where the defect did not appear upon the face of the petition.

If a person filing a complaint against the assessment of his property, willfully refuses to appear before the assessors when ordered to do so, under section 37 of the Tax Law, he forfeits his right to have his application granted, and cannot obtain a review by certiorari.

DOWLING, J., dissented, with opinion.

APPEAL by the defendants, Lawson Purdy and others, as commissioners, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of May, 1916,

denying their motion to vacate an order granting a writ of certiorari herein, and to dismiss said writ.

*William H. King* [*Eugene Fay* with him on the brief], for the appellants.

*Lewis F. Glaser*, for the respondent.

SCOTT, J.:

This is a proceeding by writ of certiorari to review the assessment of relator's real estate for the purposes of taxation in the year 1915. It comes to us upon an appeal by defendants from an order denying their motion to dismiss the proceeding for reasons to be hereinafter considered.

Sometime in the year 1914 the president of the relator corporation consulted an attorney, whom he had previously consulted on other matters, with reference to attempting to obtain a reduction of the assessment of relator's real estate. This attorney, who now represents the relator in this proceeding, had in May, 1914, organized a corporation under the name of the Expert Property Appraisers, Inc., the incorporators being the attorney himself and two clerks in his office. The president of the corporation, though not an incorporator, was one Francis C. Wilde, who had theretofore been engaged in some form of business connected with real estate. The purposes of the corporation as set forth in the certificate of incorporation were very broad. It is only necessary at present to consider the purpose expressed as follows: " To act as experts and appraisers with respect to the value of real property wherever located and to act as agent, broker, representative or in any other capacity with reference to the reduction of taxes and assessments of real property wherever located and to employ any and all lawful means on behalf of owners of such real property or otherwise in an effort to effect such reductions."

When relator's president had consulted the attorney and authorized him to attempt to obtain a reduction of the assessment, the latter, instead of attending to it personally, turned the matter over to the corporation which he had organized, and a written application for a review and reduction of the assessment was presented to the tax commissioners who in the

city of New York act as assessors.   This petition was signed
and verified by Francis C. Wilde, who described himself as
agent for the owner of the property.   In the body of the appli-
cation was a request that all notices with regard thereto
should be addressed to Expert Property Appraisers, Inc.,
at its office in the city of New York.   A notice was in due
course sent to Wilde or the association of which he was presi-
dent, as provided by section 37 of the Tax Law, requiring the
person assessed or his agent or representative to appear and be
examined respecting the complaint concerning the assessment.
No one did appear at the time appointed and Wilde, who had
signed the application for a reduction, declined in writing so to
appear.   The commissioners refused to reduce the assessment,
whereupon the attorney above mentioned sued out the present
writ of certiorari, the petition thereto being signed and verified
by relator's president.

Mr. Wilde, who had signed the application to the tax com-
missioners for a reduction of the assessment, describing him-
self as agent for the owner of the property, and who at the time
was president of the Expert Property Appraisers, Inc., testified
before the Special Term that he was not and never had been the
agent of the relator, the Trojan Realty Corporation, and had
never known any of the officers of that company.   He further
testified that the Expert Property Appraisers, Inc., above
referred to, had been organized at his suggestion, one of the
purposes being to engage in the business of obtaining the
reduction of taxes upon real property; that the agreement
between himself and the attorney was that the fees realized
from that business, being fifty per cent of the amount by
which any tax was reduced, should be divided equally between
himself and that attorney; that it was proposed to employ one
Tribelhorn as expert witness who was to testify, as required,
both before the tax commissioners, and in case of certiorari
proceedings, before the court; that for this service Tribelhorn
was to receive a fee ranging from $10 to $100, which was to be
paid him *only* in case a reduction was obtained, and that was
to come out of Wilde's share of the fee.

It is quite clear that the scheme thus devised by Wilde and

his attorney partner and the business intended to be carried on by the corporation which they formed embraced vicious features which have been condemned both by the Legislature and the courts. In the first place the business contemplated by the corporation obviously involved practicing law either by itself, or in the name of an attorney selected by it. To arrive at this conclusion it is not necessary to determine whether or not an appearance before the the tax board, clearly a *quasi* judicial body, is such practice of the law as is only justified by an attorney. Certainly suing out a writ of certiorari is as much practicing law as is the commencement of an action, and it is evident from the documentary and other evidence that the application to the tax commissioners was not a *bona fide* effort to obtain favorable action by that body, but merely the perfunctory performance of a formality which was necessary in order to lay the foundation for a judicial review of the assessment by certiorari.

One evidence of this fact is found in the circumstance that the application to the tax board was made upon a form which contained a number of questions to be answered by the applicant, so framed that the answers thereto might reasonably be expected to assist the commissioners in arriving at a just conclusion as to the value of the property, and yet not one of these questions was answered. Other evidence is to be found in the fact that the person assuming to represent the owner or its agent refused to appear before the board, when requested so to do, and thus evaded an opportunity to furnish information which might have resulted, if the property was in fact overvalued, in a reduction of the assessment. These circumstances, as we consider, sufficiently establish the fact that this application to the tax board was not made in good faith with the intent and expectation of inducing favorable action by that board. So also it seems to be quite clear that the attorney who sued out the writ did so upon the retainer of the Expert Property Appraisers, Inc., and not upon that of the relator. It is true that he had been consulted by relator's president and had been by him authorized to take steps to have the assessment reduced. This would have justified him in having his client appear before the tax board, or perhaps in

appearing himself in behalf of his client, and, if the board refused to act, in suing out a writ. But he elected not to take this obvious and straightforward course, preferring rather to turn the whole matter over to the corporation which had been organized for the purpose of doing this kind of business. His employment to sue out the writ of certiorari was undoubtedly by that corporation and not by the relator.

We are clearly of the opinion that the principal business which the Expert Property Appraisers, Inc., was organized to do, and the only business which it ever did do, to wit, the reduction of the assessment of real estate for taxation purposes, contemplated and necessarily included the practice of law by the corporation either in person or through attorneys employed by it and under its domination and control. It was, therefore, organized for an illegal purpose, and its practices were illegal. (Business Corp. Law [Consol. Laws, chap. 4; Laws of 1909, chap. 12], § 2a, as added by Laws of 1909, chap. 484; Penal Law, § 280, added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317; * *Matter of Pace,* 170 App. Div. 818; *Meisel & Co.* v. *National Jewelers Board of Trade,* 90 Misc. Rep. 19.)

Another and most objectionable feature of the scheme of those who organized the Expert Property Appraisers, Inc., was the design to use as an expert witness before the tax board and the court, a person whose compensation for his services in testifying would be entirely contingent upon the successful outcome of the endeavor upon which he was employed. (*Matter of Imperatori,* 152 App. Div. 86, 89.)

We do not hold that a property owner or person assessed may not apply to the tax board for the reduction of the assessment through a lay agent, if that agent be a person properly qualified and duly authorized, and providing that the application is made in good faith with the honest purpose of obtaining favorable action by the board. But this was evidently not such a case. Not only does it appear affirmatively that neither Wilde nor the Expert Property Appraisers, Inc., was ever appointed agent by the relator, but neither of them possessed the prescribed

---

* Since amd. by Laws of 1916, chap. 254.—[Rep.

qualification of an agent in such case. Section 37 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62)* provides as follows, concerning applications for the correction of assessments: "§ 37. * * * Such complainants shall file with the assessors a statement, under oath, specifying the respect in which the assessment complained of is incorrect, which verification must be made by the person assessed or whose property is assessed, or by some person authorized to make such statement, *and who has knowledge of the facts stated therein.*"

The obvious purpose of thus qualifying an owner's agent is that the tax board should be put into possession of reliable information from *one, who knows the facts,* to the end that it may act intelligently upon the application. A corporation which has had no prior relation to or knowledge of the property assessed cannot in the nature of things be thus qualified, and Wilde, who signed and verified the application in this particular case, confessedly had no personal knowledge on the subject. The application to the tax commissioners, therefore, upon the validity of which all subsequent proceedings depended, was not sufficient under the terms of the statute. It cannot be said that the tax commissioners waived this defect because they acted upon the petition to the extent of looking into the complaint, for the defect did not appear upon the face of the petition.

Furthermore, relator's proceedings were fatally defective, as the basis for a review by certiorari, because the person who assumed to represent the relator as its agent refused to appear before the tax board for examination when requested so to do. Section 37 of the Tax Law provides as follows: "If not satisfied that such assessment is erroneous, they [the assessors] may require the person assessed, or his agent or representative, or any other person, to appear before them and be examined concerning such complaint, and to produce any papers relating to such assessment with respect to his property or his residence for the purpose of taxation. If any such person, or his agent or representative, shall wilfully neglect or refuse to attend and be so examined, or to answer any material question put to

---

* Since amd. by Laws of 1916, chap. 323.— [Rep.

him, such person shall not be entitled to any reduction of his assessments."

The purpose of this provision, as well as of that above quoted, respecting the qualifications of an agent, is to enable the assessors to pass intelligently upon the claim for exemption or reduction, and if a person claiming such exemption or reduction willfully refuse to appear when summoned he forfeits his right to have his application granted, and cannot obtain a review by certiorari of the refusal so to grant it. (*People ex rel. Horton* v. *Ferguson*, 120 App. Div. 563; *People ex rel. Brown* v. *O'Rourke*, 31 id. 583.)

There are thus to be found two fatal defects in the proceedings taken in relator's behalf looking to a judicial review of its assessment, to wit, that the person undertaking to represent it as agent had never been appointed by relator, and had no knowledge of the facts, and that he refused to appear before the tax board when legally summoned so to appear.

The refusal to reduce the assessment under these circumstances cannot be reviewed by certiorari.

These considerations were quite sufficient to call for a dismissal of the writ, but even in a broader view the proceeding should have been dismissed because contrary to the statutes, cited above, forbidding the practice of law by corporations or by attorneys employed by them to act in behalf of others.

If the attorney who was consulted by relator's president had proceeded to act under that retainer and had himself taken the proper steps by virtue of that retainer, his client's interests would have been protected. He elected, however, not to do this, but to turn the whole matter over to a corporation which he had organized to do this class of business. As has already been pointed out the application to the tax board was merely perfunctory and *pro forma,* made not for the *bona fide* purpose of getting a reduction from that body, but as a preliminary to this appeal to the court by writ of certiorari. The whole proceeding both before the tax board and before the court was carried on by the corporation, and it is a mere coincidence that the attorney selected by this corporation happened to be the same one who was originally consulted by the relator. His appearance in this proceeding was due to his relation to and employ-

ment by the Expert Property Appraisers, Inc., and not to the relation which he happened to bear to the relator. The employment of the last-named corporation to effect a reduction of the assessment, which necessarily involved the rendition of strictly legal services either by the corporation itself or by an attorney selected by and responsible to it, were contrary to the statute and illegal. That illegality tainted every step that was taken in the proceeding, from the filing of an application with the tax board by a person falsely describing himself as the agent of the relator, down to the suing out of the writ of certiorari. In our opinion this taint of illegality vitiated the whole proceeding.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the writ dismissed, with costs.

CLARKE, P. J., SMITH and PAGE, JJ., concurred; DOWLING, J., dissented.

DOWLING, J. (dissenting):

The Trojan Realty Corporation was the owner of the premises 60 and 62 Washington street in the borough of Manhattan, city of New York. Its president was Rev. Stephen Corkemaz. For three years his personal counsel had been Lewis F. Glaser, who transacted a general law business for him. In 1914 he retained Glaser on behalf of his company to obtain a reduction of the assessment on its real estate and authorized him to do whatever he thought best to bring about the desired reduction, including the securing of appraisers or experts. Of this retainer there is no question. Instead of making the application to the tax commissioners as agent or attorney for the owner, Glaser used the services of the "Expert Property Appraisers, Inc.," a corporation, and the petition for a reduction was signed and verified by Francis C. Wilde, its president, who was not a lawyer, but a real estate broker. His examination shows that he did not consider himself the agent for the Trojan Realty Company but was employed by Glaser, who was interested with him in the "Appraisers" corporation. Wilde was told by Glaser that the latter's client was the Trojan Company and Wilde had no thought when employed of any court

proceedings by certiorari or otherwise. As a matter of fact the tax commissioners having refused to make any reduction in the assessment, this proceeding was commenced by a petition dated May 5, 1915, duly signed and verified on behalf of the Trojan Realty Corporation by Rev. Stephen Corkemaz, its president, and the writ of certiorari was allowed June 18, 1915. It does not appear that any official of the Trojan Realty Corporation had knowledge of what was done by the "Expert Property Appraisers, Inc.," before the tax board by either Wilde or Glaser.

The motion to dismiss the writ was made upon six grounds:

(1) That Glaser in applying for the writ was not acting for the owner, but for the "Appraisers" corporation.

(2) That the application filed with the tax board by the "Appraisers" corporation constituted the practice of law and was in violation of section 280 of the Penal Law (added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317)* and section 2a of the Business Corporations Law (Consol. Laws, chap. 4 [Laws of 1909, chap. 12], as added by Laws of 1909, chap. 484).

(3) That the initiation of the proceeding by the "Appraisers" corporation was in violation of the same statutes.

(4) That Glaser was "without legal authority to represent himself in applying for the writ," which was "illegally obtained and inadvisedly granted."

(5) That no application was presented to the tax board by the owner or any duly authorized agent.

(6) That no appearance was made at the hearing before the tax board.

As to the first, third and fourth objections Glaser was regularly and properly retained and authorized to represent the Trojan Realty Corporation and the granting of the order and writ was proper, as the petition was duly verified by the owner and presented by his duly accredited attorney. As to the second and fifth objections, they raise the question whether the "Expert Property Appraisers, Inc.," violated the law by acting on behalf of the owner before the tax

---

* Since amd. by Laws of 1916, chap. 254.— [REP.

**712** People ex rel. Trojan Realty Corporation *v.* Purdy.

First Department, December, 1916.                    [Vol. 174.

commissioners.    I do not believe that an appearance before the tax commissioners in order to secure, on behalf of the owner, a reduction of the assessed valuation of his property constitutes the practice of law.    It might be argued with equal force that an appearance before the building or tenement house department in an effort to secure the removal of a violation or the withdrawal of an order to do work, constituted practicing law.    The Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], § 37)* expressly recognizes the right of a complainant to make his complaint of the incorrectness of an assessment through "some person authorized to make such statement, and who has knowledge of the facts stated therein." Furthermore, the agent is not required to have personal knowledge of the facts, but only knowledge thereof.    (*People ex rel. West Shore Railroad Co.* v. *Johnson,* 29 App. Div. 78; *People ex rel. Erie R. R. Co.* v. *Webster,* 49 id. 562.)    In reviewing its assessment, I do not believe that the tax commissioners acted in a judicial, but in an administrative capacity.

As was said by Mr. Justice Cullen in *Matter of Town of Hempstead* (32 App. Div. 6): "The proceeding before us is not similar to the action of referees in the laying out of a highway, or of assessors and other taxing officers in the levy or imposition of a tax, or of public boards in determining who is the lowest responsible bidder for any proposed improvement. In those cases the action of public officers is judicial only in the broad sense of that term; that is to say, their action is governed by the exercise of judgment and discretion.    Nevertheless, though judicial in this sense, their action is unquestionably that of the administrative or executive branch of the government.    Proceedings had before such officers are, therefore, not proceedings in court, and review is by certiorari.    But this proceeding is of an entirely different character; it is judicial in the narrowest and strictest sense of that term, that of pertaining to the administration of justice through the courts."    And in *Matter of McMahon* v. *Palmer* (102 N. Y. 176) the court said: "The proceedings by which taxes for governmental purposes have been assessed, levied and collected from the citizen have

---

* Since amd. by Laws of 1916, chap. 323.— [Rep.

always been regarded as administrative, and not judicial in their character, and to constitute due process of law within the meaning of the Constitution. Such proceedings have from necessity been exercised by governments during all times by summary methods of procedure, and to require the deliberation and delay incidental to judicial proceedings in the exercise and enforcement of the taxing power by government would seriously cripple its efficiency, if not destroy its existence." In *People ex rel. Kendall* v. *Feitner* (51 App. Div. 201) it was said: " As was well said by one of the learned counsel for the relator in his argument before us upon the merits, the ' provision that testimony may be taken in the judicial proceeding which the act authorizes, implies that the judicial tribunal shall examine, consider and give due effect to the same in determining the question of illegality or erroneous overvaluation or other issue of fact arising upon the petition and return; in short, that the judicial tribunal shall deal with the testimony as courts deal with evidence, and not in the manner of mere administrative tribunals like a board of tax commissioners.' " In *Weimer* v. *Bunbury* (30 Mich. 201), Judge COOLEY, after stating defendant's contention that the words " due process of law " implied a prosecution or suit instituted and conducted according to prescribed forms and solemnities for ascertaining guilt or determining the title to property, referred to the fact that much of the process by means of which government was carried on was purely executive or administrative, and proceeded: " But the proceedings for the levy and collection of the public revenue afford still better illustration. Almost universally, these are conducted without judicial forms and without the intervention of the judicial authority; the few cases in which statutes have required the action of courts being exceptional. Where such action is not required, the proceedings are regarded as purely administrative, and any hearing allowed to parties in their progress has not been in the nature of a trial but as a means of enlightening the revenue officers upon the facts which should govern their action."

I do not think that the fact that the action of the tax commissioners is made by statute (Tax Law [Consol. Laws, chap.

60; Laws of 1909, chap. 62], §§ 37, 290;* Greater N. Y. Charter [Laws of 1901, chap. 466], §§ 895, 898, 906, as amd. by Laws of 1911, chap. 455, and Laws of 1913, chap. 324) subject to judicial review converts them into a judicial body, changes their functions from administrative to judicial, or makes the appearance of a person or corporation before them to represent an owner, to present the facts deemed to entitle him to a reduction of an assessment, the practice of law or an appearance before a judicial body.

Finally, as to the sixth objection, that no appearance was made by the agent at the hearing set by the tax commissioners, the statute not only requires that the refusal or neglect to attend must be willful in order to lose the right to a reduction but gives the commissioners power to require the attendance of the owner, which they did not seek to do in this case. The owner's agent protested that it was not given time to present its views in support of the application of its principals and submitted written statements of their grievances in lieu thereof. The tax commissioners took no further steps to require the presence of either principal or agent and there is no evidence that the latter's protest against the limited time allowed it was not justified. Where an owner has in good faith employed an attorney to protect his interests and the latter has violated no statute in guarding his client's rights, I see no reason for depriving the owner of his day in court to secure a judicial review of the assessment upon his property.

I think the order appealed from should be affirmed, with costs.

Order reversed, with ten dollars costs and disbursements, and writ dismissed, with costs.

---

* Since amd. by Laws of 1916, chap. 323.— [Rep.