LEON TANENBAUM and Others, Appellants, *v.* EUGENE HIGGINS, Respondent.

First Department, March 5, 1920.

Corporations — when performance of services before commissioners of taxes and assessments of city of New York not in violation of Penal Law, section 280.

A domestic corporation which performed services before the commissioners of taxes and assessments of the city of New York under an agreement " to reduce the assessed valuation on premises," was not engaged in the practice of law, or in the rendering or furnishing of legal services or advice, in violation of section 280 of the Penal Law so as to preclude a recovery by the assignees of said corporation for the services rendered.

APPEAL by the plaintiffs, Leon Tanenbaum and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of October, 1919, overruling plaintiffs' demurrer to the first separate defense in the answer.

*Alexander L. Strouse* of counsel [*Clarence M. Lewis* with him on the brief; *Seligsberg, Lewis & Strouse,* attorneys], for the appellants.

*W. H. Van Benschoten* of counsel [*Hugh Morgan, Jr.,* with him on the brief; *Duer, Strong & Whitehead,* attorneys], for the respondent.

DOWLING, J.:

This action is brought by plaintiffs as assignees of L. Tanenbaum, Strauss & Co., Inc., a domestic corporation, to recover the sum of $906.96 for services rendered to the defendant by said assignor. The complaint sets forth that

" Heretofore and between March 26, 1914, and February 1, 1915, said L. Tanenbaum, Strauss & Co., Inc., rendered services to the defendant, at his special instance and request, in connection with the reduction of the tax assessments on real property of the defendant, in the Borough of Manhattan, City of New York."

A copy of the request and agreement under and pursuant to which the said services were rendered is annexed to the complaint. It is as follows:

" The undersigned hereby retains L. Tanenbaum, Strauss &· Co., Inc., of No. 640 Broadway, Manhattan, New York City, to reduce the assessed valuation on premises:"

Then follows a detailed list of over twenty parcels of real estate in the borough of Manhattan, city of New York. The agreement continues: " for the year nineteen hundred and fifteen, and hereby agree to pay thirty-three and one-third per cent. (33⅓%) of the amount of tax actually saved to me for the year Nineteen hundred and fifteen, whether the same be by application filed or on argument or both in the Tax Department of the City of New York.

" If they are not successful, I am to pay nothing whatsoever.
                              " EUGENE  HIGGINS.

" Dated Cannes, France, on this ˙twenty-sixth day of March, 1914.

" Witnessed:
          " D. P. Cousteau."

The complaint then proceeds to set forth:

" 4. The said services referred in the preceding paragraph consisted of the examination of the properties hereinafter referred to, an analysis of the assessed valuations and the elements entering into the same, appraisals of each and every of the said properties with the valuations of other properties in the respective neighborhoods, the preparation and filing of suggestions with the Commissioners of Taxes & Assessments on or about the 31st day of August, 1914, and the preparation and filing of applications for the reduction of assessments with the said Commissioners on or about the 13th day of November, 1914, and the investigation of assessments of said properties and the facts affecting their valuation and bringing to the attention of the Commissioners of Taxes & Assessments, such facts referring to the valuation of the properties hereinafter referred to."

It is then averred that the agreed and reasonable value of the services rendered is $906.96, being based on reductions of the assessments on certain of the specified real estate, aggre-

gating $145,500, the details whereof are set forth in the complaint; and the tax rate for 1915 being $1.87, one-third of the saving on said reductions amounts to $906.96, payment of which has been demanded and refused, and no part of which has been paid.

The separate defense to which a demurrer has been interposed, is as follows:

" For a first, separate and distinct defense, defendant alleges upon information and belief:

" VI. That the plaintiffs' assignor, said L. Tanenbaum, Strauss & Co., Inc. was a business corporation organized in the year 1913 under the Business Corporation Law of the State of New York.

" VII. That neither during any of the times referred to in the complaint, nor at any time, was the said L. Tanenbaum, Strauss & Co., Inc., an attorney and counsellor-at-law of the State of New York, or licensed to practice law in the State of New York.

" VIII. That said agreement Exhibit A of the complaint was and is illegal, void and against public policy and the services provided by that agreement to be performed by said L. Tanenbaum, Strauss & Co., Inc., constituted the practicing of law in violation of the statutes of the State of New York, and the services alleged by the plaintiff in the complaint herein to have been rendered by the said L. Tanenbaum, Strauss & Co., Inc., constituted the practicing of law in violation of the statutes of the State of New York."

The demurrer was overruled by the learned court at Special Term upon the authority of *Tanenbaum* v. *Ross* (188 App. Div. 887). But in that case, which was affirmed without opinion, the agreement was one authorizing the corporation of L. Tanenbaum, Strauss & Co., Inc., " to take all lawful proceedings to obtain a reduction of said valuation [being the assessment for taxation] for the year 1915." This would include the bringing of certiorari proceedings to review the taxation, which would necessarily involve the rendition of legal services. The agreement under consideration contains no such authorizations, and, therefore, the case cited is not controlling.

I have heretofore expressed, in dissenting opinions (*People ex rel. Floersheimer* v. *Purdy,* 174 App. Div. 701, and *People*

*ex rel. Trojan Realty Corporation* v. *Purdy,* Id. 710) my conviction that services rendered before the tax commissioners such as are set forth in the complaint herein, do not constitute the practice of law. In the latter case I said: " I do not believe that an appearance before the tax commissioners in order to secure, on behalf of the owner, a reduction of the assessed valuation of his property constitutes the practice of law. It might be argued with equal force that an appearance before the building or tenement house department in an effort to secure the removal of a violation or the withdrawal of an order to do work, constituted practicing law. The Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62] § 37) expressly recognizes the right of a complainant to make his complaint of the incorrectness of an assessment through ' some person authorized to make such statement, and who has knowledge of the facts stated therein.' Furthermore, the agent is not required to have personal knowledge of the facts, but only knowledge thereof. (*People ex rel. West Shore Railroad Co.* v. *Johnson,* 29 App. Div. 78; *People ex rel. Erie R. R. Co.* v. *Webster,* 49 id. 562.) In reviewing its assessment, I do not believe that the tax commissioners acted in a judicial, but in an administrative capacity. * * * I do not think that the fact that the action of the tax commissioners is made by statute (Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], §§ 37, 290; Greater N. Y. Charter [Laws of 1901, chap. 466], §§ 895, 898, 906, as amd. by Laws of 1911, chap. 455, and Laws of 1913, chap. 324) subject to judicial review converts them into a judicial body, changes their functions from administrative to judicial, or makes the appearance of a person or corporation before them to represent an owner, to present the facts deemed to entitle him to a reduction of an assessment, the practice of law or an appearance before a judicial body."

While the *Floersheimer* case was reversed by the Court of Appeals (221 N. Y. 481) the precise question thus presented was not discussed, as the reversal was based on the ground that the relator had a right to review the assessment of his property of which he should not be deprived. In that case an order for a writ of certiorari to review the assessment was granted on the motion of one Lewis, representing himself as attorney for the relator, when in fact he was attorney for the

Tanenbaum corporation, and the writ was in fact issued on such application. After the relator's return from Europe, he ratified the employment of Lewis and formally retained him as his attorney in the matter.

In the *Trojan* case, a corporation, representing the owner of the property, obtained a writ of certiorari to review the assessment, the petition being signed and verified by its president.

In both cases, therefore, there was the element present of the rendition of actual legal services, and the procuring through the instrumentality of a corporation (not the owner of the property) of a writ of certiorari.

In the present case the agreement provided for the rendition of no legal services, nor were legal services in fact rendered. There is nothing in the recent cases of *People* v. *Alfani* (227 N. Y. 334) and *People* v. *Title Guarantee & Trust Co.* (Id. 366) which brings the acts performed by the plaintiffs' assignor within the prohibition of section 280 of the Penal Law (added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317).* I do not believe that the corporation was practicing law, appearing as an attorney, rendering or furnishing legal services or advice or in any way violating the provisions of the Penal Law.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with ten dollars costs.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

---

* Since amd. by Laws of 1916, chap. 254.— [REP.